UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN ERICKSON and SHELLEY ERICKSON, husband and wife; PERSON LANES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF AUBURN,<br><br>Defendant. | Case No. C07-683 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 25.) After reviewing the motion, Plaintiffs' response (Dkt. No. 28), Defendant's reply (Dkt. No. 36), all papers submitted in support thereof, and the balance of the record, the Court GRANTS the motion and DISMISSES this action. The Court's reasoning is set forth below.

**Background**

In 2001, Plaintiffs (hereinafter, the "Ericksons") learned that the commercial property housing their salon had been sold and the new owner was unlikely to renew their lease. (Am. Cmplt at ¶ 11.) They then bought a parcel of land and began work on designs for a new building for the salon. (Id. at ¶¶ 9 & 12.) Below is a summary of the relevant facts concerning the development process.

1. On September 24, 2002, the Ericksons contacted the City of Auburn (the "City") and made a pre-application request to begin the development process. (Dkt. No. 35 at 19- 21.) The pre-application meeting was held on October 16, 2002. (Dkt. No. 35 at 23-27.)

2. On November 12, 2002, the Ericksons submitted their SEPA Environmental Checklist

ORDER — 1

("SEPA application"). (Dkt. No. 35 at 28-38.) The City informed the Ericksons that the SEPA application could not be processed, in part because the Ericksons had not included a project permit application. (Dkt. No. 35 at 39-40.) On February 11, 2003, the Ericksons submitted a facilities permit application and on March 3, 2003, the Ericksons submitted a building permit application. (Dkt. No. 35 at 43 & 46.)

4. After submitting the SEPA application in November 2002 and before submitting the facilities permit application in February 2003, the Ericksons added a drive-through espresso stand to their proposed development project. On April 9, 2003, the City informed the Ericksons that addition of the espresso stand would delay the application. (Dkt. No. 35 at 47-48.) After the Ericksons informed the City that they would remove the proposed espresso stand to prevent delay, the City proceeded with the review. (Dkt. No. 35 at 49-52)

5. On June 3, 2003, the City issued its Final Determination of Non-Significance for the Ericksons' proposal. (Dkt. No. 35 at 55.) Ten days later, the City notified the Ericksons that their construction plans had been approved and that they were required to schedule a conference with the City before beginning construction. (Dkt. No. 30 at 3.)

6. On August 28, 2003, the Ericksons' landlord notified them that they had to vacate their rented location by September 30, 2003. (Am. Cmplt at ¶ 21.) Knowing that they could not complete construction of their new building before that date, the Ericksons submitted a second building permit application to the City on September 25, 2003 requesting permission to locate a modular building on the new property. (Am. Cmplt at ¶ 23; Dkt. No. 35 at 61.) The Ericksons sought permanent occupancy of the modular building from the beginning. (Dkt. No. 29 at 2.)

7. On October 8, 2008, the City "red-tagged" the Ericksons' work site halting all construction until they paid a $17,200 traffic fee. (Am. Cmplt at ¶ 29; Dkt. No. 26 at 12.) Ms. Erickson paid the fee and alleges that the City also required her to sign a letter agreeing to consider the modular building a temporary structure that would "be permitted for occupancy for a maximum period of twelve (12) months[.]" (Dkt. No. 35 at 65.) The letter is dated September

ORDER — 2

24, 2003. (Am. Cmplt at ¶¶ 24 & 31; Dkt. No. 26 at 12.) The traffic fee was later adjusted when the City determined it was incorrectly calculated. (Dkt. No. 35 at 67.)

8. On October 8, 2003, the City issued a temporary permit for the modular building. (Dkt. No. 35 at 66.)

9. On November 12, 2003, after the modular building was installed, the City conducted its final inspection of the modular building. (See Dkt. No. 35 at 70.)

10. In January 2004, the Ericksons met with the City to discuss the possibility of either extending or making permanent the temporary permit for the modular building. (Dkt. No. 35 at 68-71.) The City informed the Ericksons that they would need to submit a new environmental checklist application and that they may also need a new building permit. (Dkt. No. 35 at 70-71.)

11. On March 12, 2004, the Ericksons filed their second SEPA application. (Dkt. No. 35 at 72-81.) The City conducted its review of the application and issued a Final Mitigated Determination of Non-Significance ("MDNS") on May 20, 2004. (Dkt. No. 35 at 84-86.) This MDNS included a list of mitigation measures to be implemented by the Ericksons. (Dkt. No. 35 at 86.)

12. After the Ericksons made additional modifications required by the City (see Dkt. No. 35 at 87-89), the City issued a Certificate of Occupancy for the modular building granting it permanent status on July 26, 2004. (Dkt. No. 35 at 90.)

**Procedural History**

Proceeding pro se, the Ericksons filed their original complaint against multiple Defendants in King County Superior Court on December 29, 2006. Defendants removed the matter to this Court on January 26, 2007. (See Case No. C07-126 MJP at Dkt. No. 1.) On March 9, 2007, the Court remanded the case after finding that it lacked subject matter jurisdiction. (Id. at Dkt. No. 6.) The Ericksons obtained counsel and then filed an amended complaint in state court on April 4, 2007, naming the City of Auburn as the only defendant. (Dkt. No. 1-2.) On May 3, 2007, the City again removed the case to this Court. (Dkt. No. 1.)

ORDER — 3

The City filed its amended answer on May 10, 2007 and asserted as an affirmative defense that some or all of the claims were barred by the applicable statute of limitations. (Dkt. No. 5 at 15.)

The amended complaint contains both federal and state claims against the City. The Ericksons allege that the City's actions during the development process: (1) constitute a violation of the Ericksons' procedural due process and equal protection rights; (2) effected a taking of the Ericksons' property; (3) interfered with a contractual expectancy; and (4) support claims for negligence and misrepresentation. (Dkt. Nos. 1-2.) The City's motion for summary judgment contends that each of these claims is barred by the applicable statute of limitations.

**Analysis**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are facts "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

The City prevails on its motion for summary judgment because each of the Ericksons' claims is time-barred. Each cause of action had accrued by October 8, 2003. Yet, the Ericksons waited over three years to bring any claims against the City, filing their original complaint on December 29, 2006. Because the longest statute of limitations period applicable to any of the claims is three years, the claims must be dismissed as untimely.

1. The Federal and State Standards

The Ericksons bring three federal claims pursuant to 42 U.S.C. § 1983. The statute of limitations for federal civil rights claims is three years. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002). To determine the date these causes of action accrued, the Court must look to federal law. Canatella v. Van De Kamp, 486 F.3d 1128, 1133 (9th Cir. 2007).

ORDER — 4

"Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir. 1999).

The Ericksons urge the Court to apply the discovery rule to these claims, which defines the accrual date as the date "when [the injury] is discovered or should have been discovered." (Resp. at 5, citing Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n, 377 F.3d 682, 688 (7th Cir. 2004)). Plaintiffs insist that this rule requires discovery of the injury and who has caused the injury before the claim accrues. (Resp. at 5.) This is not the standard adopted by the Ninth Circuit. Nonetheless, as discussed below, even if the Court were to apply the discovery rule to the federal claims, the date the claims accrued would fall more than three years before the Ericksons brought this action.

The Ericksons' remaining state law claims sound in tort and are subject to a three year statute of limitations. RCW § 4.16.080. Under Washington law, a tort claim accrues at the time the act or omission causing injury occurs. In re Estates of Hibbard, 118 Wn.2d 737, 744 (Wash. 1992). The acts complained of in the Ericksons' complaint had occurred by October 8, 2003. However, Plaintiffs again urge the Court to use the discovery rule to determine the claim accrual date. When the nature of a tort prevents an injured party from knowing about the injury at the time of the act or omission, Washington law applies the "discovery rule," which states that the cause of action accrues "at the time the plaintiff knew or should have known all of the essential elements of the cause of action." Id.; see also Green v. A.P.C., 136 Wn.2d 87, 95 (Wash. 1998).

As discussed below, Plaintiffs' claims would also be time-barred under the discovery rule. Because a person who suffers injury necessarily knows or should know the elements of his claim, the statute of limitations begins to run as soon as an injury is discovered, even if the plaintiff does not "understand all the legal consequences of the claim." Green, 136 Wn.2d at 95-97. Further, it is not necessary that all the damages resulting from the act be sustained at the time of discovery; even a slight injury that precedes greater harm is sufficient to notify the plaintiff of his claim. Id. at 96. Finally, "[t]he discovery rule requires a plaintiff to use due

ORDER — 5

diligence in discovering the basis for the cause of action." Allen v. State, 118 Wn.2d 753, 758 (Wash. 1992) (internal citation omitted). As discussed below, the Ericksons had discovered or should have discovered their alleged injuries by October 8, 2003.

2. Date of Accrual

To support their claims, the Ericksons allege that the City: (1) failed to "process[] their application for building permits in a timely manner" leaving them with insufficient time to complete construction of their new building before they were evicted from their leased premises; (2) improperly charged a traffic fee and "red-tagged" their construction site on October 8, 2003; and (3) improperly informed the Ericksons that the "the modular building could not be given permanent status due to a City ordinance." (Am. Cmplt at ¶¶ 22 -26, 29-31.) The Ericksons were required to bring their claims within three years of the date they knew of the injuries caused by these acts.

    A. Delay in Processing Permits

The City concluded the review of the first building permit application (for construction of a new building) by June 2003 and informed the Ericksons that they could begin construction after they attended a pre-construction meeting with the City. The City granted the Ericksons' second building permit application (for the modular building) on October 8, 2003.[1] Any claim related to the timely processing of either of these permit applications accrued no later than the date the permit was issued.

If, as Plaintiffs suggest, the Court were to apply the discovery rule, any claims related to the alleged delay would accrue no later than September 30, 2003. The Ericksons identify only one injury resulting from the City's alleged delay in processing their building permits. In the

---

[1] The Amended Complaint incorrectly alleges that "[t]he City did not issue the permit for the modular building until July 26, 2004." (Am. Cmplt at ¶ 28.) In fact, it is undisputed that a temporary permit for the modular building was issued on October 8, 2003. (Dkt. No. 35 at 66.) On July 26, 2004, the City issued a Certificate of Occupancy granting a permanent permit for the modular building. (Dkt. No. 35 at 90.)

ORDER — 6

complaint, they state that "[i]f the City had processed their application for building permits in a timely manner, the Ericksons would have had sufficient time to complete construction of their building." (Am. Cmplt at ¶ 22; see also S. Erickson Decl. at ¶ 5 ("Even though the City knew that we were under a time crunch, they took forever to process our application. Before any permit was issued, in August 2003 we got an eviction notice from our landlord.").) Under the discovery rule, the Court would look to the date the Ericksons discovered (or should have discovered) the injury caused by the City's alleged delay – at the latest, that date is September 30, 2003, the date the Ericksons were required to vacate their rented space. Because the Ericksons did not bring their complaint within three years of that injury, any claims related to the City's alleged delay in processing building permits are barred by the statute of limitations.

### B. The Traffic Fee and "Red-Tagging"

Plaintiffs also claim that the City improperly charged them a traffic fee and "red-tagged" their construction site, halting all work on the site. (Am. Cmplt at ¶¶ 29-31.) The City's alleged wrongful act occurred on October 8, 2003, and the record shows that the Ericksons had knowledge of the act and any resulting injury on that date. The Ericksons paid the fee on October 8, 2003 even though they believed that it should not have been charged. (Am. Cmplt at ¶ 30 ("Mrs. Erickson had previously been told by City officials that the traffic fee would only be required when they completed the commercial building on the Property").) The record establishes that the Ericksons knew of the alleged wrongful act and resulting injury no later than October 8, 2003 and their current claims related to that act expired on October 8, 2006, more than two months before the Ericksons filed their complaint.

### C. Denying the Modular Building Permanent Status

Although the Ericksons sought permanent occupancy status for their modular building, the City granted them a temporary permit for the modular on October 8, 2003. (Dkt. No. 35 at 66.) The Ericksons allege that the modular building qualified for permanent status under a City ordinance. Any injury resulting from the City's error occurred on October 8, 2003 when the

ORDER — 7

temporary permit was granted and permanent status was denied.

The Ericksons now assert that they did not receive notice of the City's error in denying them permanent status for the modular building until June 2004. (S. Erickson Decl. at ¶ 10.) This statement, presented for the first time in the brief opposing this motion and the attached declaration, blatantly contradicts the record before the Court. (See Resp. at 6 ("Prior to [June 28, 2004], the Ericksons had no reason to even suspect that Auburn had erred or taken any actions other than those which may have been appropriate.").) After the Mayor of Auburn informed Ms. Erickson in August 2003 that permanent modulars were not permitted in Auburn, she "confirmed with Alan Poe, the civil engineer for the project [] that Auburn in fact had no laws or ordinances forbidding permanent occupancy of [of a modular building]." (Dkt. No. 37 at 8.) After meeting with the Mayor , Ms. Erickson "started taking pictures of all the modulars in Auburn" to bring to the planning meeting with the City. (Dkt. No. 37 at 14.) During the September 12, 2003 pre-construction meeting for the modular, Ms. Erickson informed the City "that there are modular buildings all over Auburn." (Dkt. No. 37 at 8.) Ms. Erickson also alleges that the City <u>forced</u> her to sign a letter acknowledging the temporary nature of the modular on October 8, 2003. (Dkt. No. 26 at 12 ("[they] made me pay the traffic fee and made sign [the letter] before I could leave.").) Apparently, Ms. Erickson did not wish to sign the letter because she believed the modular building should be granted permanent status.

The Ericksons do not dispute any of these facts. Nonetheless, Ms. Erickson states in her most recent declaration, "[w]e did not have any knowledge that the City had done anything illegal at the time; we were just following the process as best we could." (Dkt. No. 29 at 2.) Ms. Erickson would now have us believe that she had no knowledge of the City's alleged wrongdoing until the City allegedly admitted its own error in a June 2004 letter. Ms. Erickson's conclusory statement is contradicted by the undisputed evidence in the record showing that Ms. Erickson believed in the fall of 2003 that the City was wrong to deny her permanent status for the modular building. In her declaration, Ms. Erickson says the June 2004 letter informed the

ORDER — 8

Ericksons that "[the City] knew that we could have the modular on a permanent basis, as I had been asking for. This was the first time anyone from the City told me that any error had been made." (Dkt. No. 29 at 2.) While the City may not have previously informed Ms. Erickson of its alleged error, the record shows that she was on notice from other sources in September 2003 that permanent modulars were allowed in the City of Auburn.

The Court cannot adopt a rule stating that a plaintiff's statute of limitations accrues only once the defendant <u>admits</u> its own wrongful conduct, even when the plaintiff suspected and insisted that the defendant was engaged in wrongful conduct long before the admission. With such a rule in place, many potential claims would never accrue because potential defendants are unlikely to admit a wrongful act.

On a motion for summary judgment, the Court is required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the motion. However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1776 (2007) (finding no genuine issue of material fact when plaintiff's assertion that he did not endanger others during a car chase was contradicted by videotape of the chase). When a party's story is "blatantly contradicted by the record, so that no reasonable jury could believe it" a court should not adopt that story for purposes of ruling on a summary judgment motion. <u>Id.</u>

The nonmoving party bears the burden of coming forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Despite the conclusory statement in Ms. Erickson's declaration, Plaintiffs have not offered any specific evidence supporting their claim that they were ignorant of the City's allegedly wrongful denial of a permanent permit for their modular building before June 2004. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Based on the record, the Court finds that the Ericksons knew of the City's allegedly

ORDER — 9

wrongful conduct on October 8, 2003 when the temporary permit for the modular building was granted and permanent status denied. Any claims related to that conduct or resulting injury accrued on that date. The Ericksons failed to bring their current claims within the applicable statutes of limitations and they must be dismissed as untimely.

**Conclusion**

Because each of the Ericksons' claims is barred by the applicable statutes of limitations, the claims are dismissed and the City's motion for summary judgment is GRANTED. This action is hereby DISMISSED with prejudice.

The Clerk is directed to send a copy of this order to all counsel of record.

Dated: October 24, 2008.

/s/ Marsha J. Pechman

Marsha J. Pechman

U.S. District Judge